IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HEMISPHERX BIOPHARMA, INC., | : | CIVIL ACTION NO. |
| Plaintiff, | : | |
| v. | : | DEMAND FOR JURY TRIAL |
| FEDERAL INSURANCE COMPANY, | : | |
| Defendant. | : | |

## COMPLAINT

Plaintiff, Hemispherx Biopharma, Inc. ("Hemispherx"), by its undersigned attorneys, hereby submits its Complaint against defendant Federal Insurance Company ("Federal") and, in support thereof, alleges as follows:

## NATURE OF THE ACTION

1.  This action arises out of Federal's failure to fully defend the interests of Hemispherx in several underlying lawsuits. That failure to defend gave rise to: (a) Federal's breach of the insurance policy it sold to Hemispherx; (b) Federal's breach of its fiduciary duty of good faith and fair dealing; and (c) Federal's violation of Pennsylvania's Bad Faith Statute, 42 Pa. C.S.A. § 8371.

2.  By this Complaint, Hemispherx seeks: (a) a judicial order declaring the rights of Hemispherx and the obligations of Federal under the insurance policy Federal sold to Hemispherx; (b) monetary damages for the breach of contract resulting from Federal's refusal to fully defend Hemispherx in connection with certain underlying lawsuits; (c) monetary damages to compensate Hemispherx for Federal's breach of its fiduciary duty of good faith and fair

dealing; and (d) monetary damages, interest, costs, and attorney fees to compensate Hemispherx for Federal's violation of the Pennsylvania Bad Faith Statute.

## THE PARTIES

3. Hemispherx is a biopharmaceutical company engaged in the manufacture and global development of new drugs. It is incorporated under the laws of the State of Delaware, with its principal place of business in Philadelphia, Pennsylvania.

4. Federal is an insurance company that sold general liability insurance coverage to Hemispherx during the period of May 26, 1998 through May 26, 1999. Upon information and belief, Federal is incorporated under the laws of the State of Indiana, with its principal place of business in New Jersey.

## JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. § 1332 and 28 U.S.C. § 2201. The parties are of diverse citizenship, and the amount in controversy is greater than $75,000.00.

6. Venue in this Court is proper pursuant to 28 U.S.C. § 1391, in that (a) a substantial part of the events or omissions giving rise to this action occurred in this judicial district; and/or (b) Federal resides in this judicial district, for venue purposes.

## THE UNDERLYING LAWSUITS

7. The liabilities for which Hemispherx sought a defense from Federal arose out of a series of lawsuits collectively referred to hereinafter as the "Underlying Lawsuits."

8. The Underlying Lawsuits were initiated when Hemispherx filed a complaint in this Court against Manuel P. Asensio ("Asensio") and Asensio & Company, Inc. ("ACI") in an

action captioned as: <u>Hemispherx Biopharma, Inc. v. Asensio and Asensio & Company, Inc.</u>, C.A. No. 98-CV-5204 (E.D. Pa.) (hereinafter, the "Pennsylvania Action").

9. In response to Hemispherx's First Amended Complaint in the Pennsylvania Action, Asensio and ACI filed an Answer, Affirmative Defenses and Counterclaim.

10. The Pennsylvania Action was eventually dismissed by the United States District Court for the Eastern District of Pennsylvania and transferred to the Pennsylvania Court of Common Pleas. The Court of Common Pleas action, captioned as <u>Hemispherx Biopharma, Inc. v. Manual P. Asensio, Asensio & Co., Inc. and Asensio.Com, Inc.</u>, No. 3970 (Pa. Ct. Common Pleas, Philadelphia) remains ongoing.

11. Asensio and ACI commenced another action against Hemispherx, Hemispherx's chief executive officer, Dr. William A. Carter, and others in the state courts of New York, captioned as <u>Asensio and Asensio & Company, Inc. v. Hemispherx Biopharma, Inc. et al.</u>, Index No. 112001/00 (Sup. Ct. N.Y.) (hereinafter, the "First New York Action").

12. Finally, Asensio, ACI and Asensio.com Inc. (collectively referred to as the "<u>Asensio</u> Plaintiffs") commenced an additional action against Hemispherx and Dr. Carter in the state courts of New York, captioned as <u>Asensio, et al. v. Hemispherx Biopharma, Inc.</u>, Index No. 114050/00 (Sup. Ct. N.Y.) (hereinafter, the "Second New York Action").

13. In the various Underlying Lawsuits, the <u>Asensio</u> Plaintiffs alleged, among other things, that:

    a. Hemispherx and/or Dr. Carter allegedly made false and defamatory statements regarding the <u>Asensio</u> Plaintiffs;

  b. The false and defamatory statements allegedly made by Hemispherx and/or Dr. Carter disparaged the <u>Asensio</u> Plaintiffs;

  c. Hemispherx and/or Dr. Carter commenced allegedly meritless litigation against the <u>Asensio</u> Plaintiffs; and

  d. Hemispherx and/or Dr. Carter allegedly invaded the privacy of the <u>Asensio</u> Plaintiffs.

### **FEDERAL'S CUSTOMARQ QUALITY POLICY**

14. During the period of May 26, 1998 through May 26, 1999, Federal sold Hemispherx a group of insurance policies collectively referred to by Federal as "Customarq Services Quality Commercial Coverage" (hereinafter, "Federal Customarq Quality Policy").

15. The Federal Customarq Quality Policy included general liability insurance.

16. Pursuant to the general liability insurance of the Federal Customarq Quality Policy, Federal promised to insure Hemispherx as follows:

> Subject to the applicable Limits Of Insurance, we will pay damages the insured becomes legally obligated to pay by reason of liability imposed by law or assumed under an insured contract for:
>
> - bodily injury or property damage to which this insurance applies caused by an occurrence; or
>
> - advertising injury or personal injury to which this insurance applies caused by an offense.
>
> This insurance applies to:
>
> - bodily injury or property damage which occurs during the policy period; and
>
> - advertising injury or personal injury caused by an offense committed during the policy period.

4

>Damages for bodily injury include damages claimed by any person or organization for care or loss of services resulting at any time from the bodily injury.

17. Federal promised to defend the interests of Hemispherx and its employees in accordance with the following provision:

>We will have the right and duty to defend any insured against a suit seeking damages for bodily injury, property damage, advertising injury, or personal injury. However, we will have no duty to defend any insured against a suit seeking damages to which the insurance does not apply. We may at our discretion investigate any occurrence or offense and settle any claim or suit that may result.

18. The term "advertising" is defined in the Federal Customarq Quality Policy as: "any advertisement, publicity article, broadcast or telecast."

19. "Advertising injury" is defined in the Federal Customarq Quality Policy as follows:

>Advertising injury means injury, other than bodily injury, arising solely out of one or more of the following offenses committed in the course of advertising of your goods, products or services:
>
>- oral or written publication of advertising material that slanders or libels a person or organization;
>
>- oral or written publication of advertising material that violates a person's right of privacy; or
>
>- infringement of copyrighted advertising materials or infringement of trademarked or service marked titles or slogans.

20. "Personal injury" is defined in the Federal Customarq Quality Policy as follows:

>Personal injury means injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising:
>
>A.    false arrest, detention or imprisonment;

      B.      malicious prosecution;

      C.      the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or persons occupy, by or on behalf of its owner, landlord or lessor;

      D.      oral or written publication of material that slanders or libels a person or organization;

      E.      oral or written publication of material that violates a person's right of privacy; or

      F.      discrimination (unless insurance thereof is prohibited by law) based on race, color, religion, sex, age or national origin; except when alleged, charged or suffered by any:

          1.      applicant for employment;

          2.      present or former employee; or

          3.      prospective employee.

21. The allegations by the <u>Asensio</u> Plaintiffs in the Underlying Lawsuits fell potentially within the coverage for "advertising injury" and "personal injury" provided under the Federal Customarq Quality Policy and, accordingly, Federal had a duty to defend the interests of Hemispherx and Dr. Carter in the Underlying Lawsuits.

## **FEDERAL'S FAILURE TO FULLY DEFEND HEMISPHERX**

22. On October 5, 1999, Hemispherx notified Federal of the Answer, Affirmative Defense and Counterclaim filed by the <u>Asensio</u> Plaintiffs in the Pennsylvania Action.

23. On October 15, 1999, Federal responded by denying coverage for any award against Hemispherx for punitive damages and for any costs associated with Hemispherx's direct claims against the <u>Asensio</u> Plaintiffs. According to Federal, "Pennsylvania courts have ruled that it is against public policy in the Commonwealth to insure against such [punitive] damages" and

that "costs or expenses associated with your action will be your responsibility, and not that of Federal Insurance Company."

24. Thereafter, on October 18, 1999, Federal advised Hemispherx that it had retained Michael Plevyak of the White and Williams law firm to defend the interests of Hemispherx against the Counterclaims asserted by the <u>Asensio</u> Plaintiffs in the Pennsylvania Action.

25. On November 23, 1999, Federal further reserved its rights to deny coverage for the Pennsylvania Action by asserting the following positions:

    a. Federal agreed to provide coverage for the defamatory and disparaging statements allegedly made by Hemispherx and asserted in Count I of the <u>Asensio</u> Plaintiffs' Counterclaim.

    b. Federal, however, refused to provide coverage for any of the <u>Asensio</u> Plaintiffs' allegations of libel and slander, "if the publication of the material was done with knowledge of its falsity." In this regard, Federal relied on the so-called "intentional falsehoods" exclusion of the Federal Customarq Quality Policy, which provides as follows:

> This insurance does not apply to advertising injury or personal injury arising out of oral or written publication of material if done by or at the direction of the insured with knowledge of its falsity.

    c. Federal refused to provide coverage for any allegation of "disparagement" contained in Count I of the <u>Asensio</u> Plaintiffs' Counterclaim.

    d. Federal refused to provide coverage to Hemispherx for the claims asserted in Count II of the <u>Asensio</u> Plaintiffs' Counterclaim, which Federal characterized as an uncovered claim for "trade disparagement."

  e. Federal refused to provide coverage to Hemispherx for any claim for punitive damages, stating: "Pennsylvania courts have ruled that it is against public policy in the Commonwealth of Pennsylvania to insure against such damages."

  f. Federal refused to reimburse Hemispherx for any costs incurred in defending against the <u>Asensio</u> Plaintiffs' Counterclaim prior to the date when Federal was notified of that Counterclaim on October 6, 1999.

  g. After initially advising Hemispherx that it would assign Michael Plevyak of the White and Williams law firm to defend the interests of Hemispherx, Federal acquiesced in allowing Hemispherx's already retained counsel to continue handling the case.

  h. Federal, however, refused to reimburse Hemispherx for any costs associated with Hemispherx's direct claims against the <u>Asensio</u> Plaintiffs and eventually agreed to reimburse Hemispherx for only 60% of the costs incurred in the Pennsylvania Action.

  i. Furthermore, Federal stated that counsel handling the Pennsylvania Action on behalf of Hemispherx must first seek prior written approval for any "extraordinary" expenses incurred. According to Federal, "extraordinary" expenses included: "without limitation investigative services, computer litigation, support services, video taping of depositions, retention of experts, travel expenses, meals, etc."

26. The Pennsylvania Action was subsequently dismissed from federal court for lack of subject matter jurisdiction. Federal refused to pay or reimburse Hemispherx for any costs or expenses related to reconsideration or appeal of that decision and for any costs or expenses involved in thereafter transferring the Pennsylvania Action to the Court of Common Pleas, Philadelphia.

27. The Pennsylvania Action remains pending.

28. On June 9, 2000, Hemispherx notified Federal of the First New York Action commenced by the Asensio Plaintiffs.

29. On June 21, 2000, Federal agreed to defend Hemispherx in the First New York Action, pursuant to a reservation of rights, and assigned the law firm of Quirk & Bakalor to represent the interests of Hemispherx and Dr. Carter.

30. On August 23, 2000, Hemispherx notified Federal of the Second New York Action commenced by the Asensio Plaintiffs.

31. On August 30, 2000, Federal agreed to defend Hemispherx and Dr. Carter in the Second New York Action, pursuant to a reservation of rights, and assigned the law firm of Quirk & Bakalor to represent the interests of Hemispherx and Dr. Carter.

32. On October 6, 2000, however, Federal advised Hemispherx that no coverage existed for the allegations contained in the Second New York Action. Nevertheless, Federal expressed its willingness to provide "a gratuitous conditional defense of this matter, subject to a reservation of rights."

33. Federal's offer to defend the Second New York Action was "conditioned upon the use of counsel of our choice as defense counsel."

34. Thereafter, on October 20, 2000, Federal advised further that its agreement to defend the Second New York Action was also conditioned upon Federal retaining "discretion over the direction of the defense of this case."

35. After Hemispherx objected to Federal controlling the defense of the Second New York Action, Federal withdrew from the defense of that action and advised Hemispherx to retain counsel to defend the Second New York Action at Hemispherx's expense.

36. At the same time, Federal advised Hemispherx that it was withdrawing its reliance on the so-called "intentional falsehoods" exclusion as a basis for denying coverage for the First New York Action and, accordingly, Federal asserted that it had the right to defend the First New York Action "as we deem appropriate." Federal asserted further that it "has the right to defend this matter with counsel of its choice, and to control the defense of the case."

**COUNT ONE**
**<u>DECLARATORY JUDGMENT</u>**

37. Hemispherx repeats and realleges the allegations of paragraphs 1 through **36** of this Complaint, as if fully set forth herein.

38. The claims asserted in the Underlying Actions were and are covered, or potentially covered, by the Federal Customarq Quality Policy.

39. Accordingly, Federal was and is obliged to defend Hemispherx in the Underlying Actions or to pay the defense costs expended by Hemispherx.

40. Hemispherx timely performed all applicable conditions under the Customarq Quality Policy.

41. To date, however, Federal has refused to fully defend Hemispherx in connection with the Underlying Actions and is likely to continue to do so to the extent those Underlying Actions remain pending.

42. By reason of the foregoing, an actual and justiciable controversy exists between Hemispherx and Federal concerning Federal's obligations to defend Hemispherx's interests in the Underlying Actions or pay Hemispherx's defense costs.

43. Accordingly, Hemispherx seeks a judicial declaration by this Court of Federal's obligations to defend, and to continue to defend, Hemispherx, or to pay, and to continue to pay, Hemispherx's defense costs in the Underlying Actions.

WHEREFORE, Hemispherx requests that this Court (a) declare that Federal is obliged to defend Hemispherx, or to pay Hemispherx's defense costs in connection with the Underlying Actions, and (b) award Hemispherx its attorney's fees and costs expended in connection with this action, as well as such other and further relief as this Court deems just and proper.

## COUNT TWO
## BREACH OF CONTRACT

44. Hemispherx repeats and realleges the allegations of paragraphs 1 through 43 of this Complaint, as if fully set forth herein.

45. Because the claims asserted by the Asensio Plaintiffs in the Underlying Lawsuits were covered, or potentially covered, by the Federal Customarq Quality Policy, Federal had a duty to defend Hemispherx against the Underlying Lawsuits, or to pay for the costs of that defense.

46. Hemispherx performed all applicable conditions under the Federal Customarq Quality Policy.

47. Federal, however, failed to fulfill its duty to defend Hemispherx and Dr. Carter, in breach of the Federal Customarq Quality Policy, by:

a. refusing to pay for the costs incurred by Hemispherx in the defense of the Pennsylvania Action prior to October 6, 1999;

b. refusing to pay the total costs incurred by Hemispherx in the defense of the Pennsylvania Action after October 6, 1999;

c. refusing to pay for the costs incurred by Hemispherx in prosecuting its claims in the Pennsylvania Action, including the costs of reconsideration, appeal and transfer, that were inextricably intertwined with the defense of the Counterclaim asserted by the Asensio Plaintiffs;

d. failing to cede control of the defense of the Underlying Lawsuits, notwithstanding the conflict of interest that existed between Federal and its policyholders, Hemispherx and Dr. Carter;

e. failing to pay the costs incurred by Hemispherx in retaining independent counsel to work with Federal's retained counsel in the First New York Action, after Federal refused to permit Hemispherx to control the defense of the First New York Action; and

f. withdrawing from the defense of Hemispherx and Dr. Carter in the Second New York Action.

48. As a result of the failure of Federal to fulfill its duty to defend Hemispherx and Dr. Carter in the Underlying Lawsuits, Hemispherx was forced to assume that obligation.

49. The failure of Federal to fulfill its duty to defend Hemispherx and Dr. Carter has caused damage to Hemispherx.

WHEREFORE, Hemispherx requests that judgment be entered in its favor and against Federal, in an amount equal to the unreimbursed sums expended by Hemispherx in its

investigation, prosecution**,** and defense of the Underlying Lawsuits, together with attorney's fees, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT THREE
## BREACH OF FIDUCIARY DUTY OF
## <u>GOOD FAITH AND FAIR DEALING</u>

50. Hemispherx repeats and realleges the allegations of paragraphs 1 through 49 of this Complaint, as if fully set forth herein.

51. By virtue of its Federal Customarq Quality Policy, Federal undertook a fiduciary duty to act fairly, in good faith and with honesty and equity in its dealings with Hemispherx, and covenanted to do nothing to injure, frustrate or interfere with Hemispherx's rights to receive the benefits of the Federal Customarq Quality Policy.

52. Federal acted in a manner inconsistent with the purpose for which the Federal Customarq Quality Policy was made and in a manner that is injurious to Hemispherx's right to receive the benefits of the Federal Customarq Quality Policy.

53. Federal breached its fiduciary duty of good faith and fair dealing towards Hemispherx by other acts and omissions, including:

    a. refusing to pay for the costs incurred by Hemispherx in defending the Pennsylvania Action prior to October 6, 1999, when there was no legal justification for that refusal;

    b. refusing to pay the total costs incurred by Hemispherx in defending the Pennsylvania Action after October 6, 1999, when there was no legal justification for that refusal;

    c. refusing to pay for the costs incurred by Hemispherx in prosecuting its claim against the <u>Asensio</u> Plaintiffs in the Pennsylvania Action, even though the prosecution of

those claims was inextricably intertwined with Hemispherx's defense of the <u>Asensio</u> Plaintiffs' Counterclaims and even though there was no legal justification for that refusal;

      d.      failing to cede control of the defense of the Underlying Lawsuits when the conflict of interest between Federal and Hemispherx mandated that Federal both cede control of the defense and allow Hemispherx to retain independent counsel paid for by Federal;

      e.      refusing to pay the costs incurred by Hemispherx in retaining independent counsel to work with Federal's retained counsel, after Federal refused to permit Hemispherx to control the defense of the First New York Action, when there was no legal justification for that refusal;

      f.      ceasing to provide Hemispherx and Dr. Carter with a defense against the claims asserted in the Second New York Action when those claims were potentially covered by the Federal Customarq Quality Policy;

      g.      ignoring pertinent policy provisions or judicial interpretations thereof;

      h.      unreasonably, inadequately or improperly investigating Hemispherx's claims and requests;

      i.      committing unfair and deceptive acts and practices in the handling of Hemispherx's insurance claim; and

      j.      forcing Hemispherx to sue in order to obtain the insurance coverage to which it is due.

54.      Federal's breach of its fiduciary duty of good faith and fair dealing was undertaken to protect its own pecuniary interests, without regard to its obligations under the Federal Customarq Quality Policy, or to the interests of Hemispherx.

55. As a direct result of Federal's breach of its fiduciary duty of good faith and fair dealing, Hemispherx has suffered and is continuing to suffer damages, costs and other losses.

WHEREFORE, Hemispherx requests that judgment be entered in its favor and against Federal for breach of its fiduciary duty of good faith and fair dealing, in an amount equal to the damages incurred by Hemispherx as a result of that breach, together with attorneys' fees, interest, costs and such other and further relief as this Court deems just and proper.

## COUNT FOUR
## STATUTORY BAD FAITH

56. Hemispherx repeats and realleges the allegations of paragraphs 1 through 55 of this Complaint, as if fully set forth herein.

57. The conduct of Federal towards Hemispherx, as described in Count Two and incorporated herein, has been and continues to be wrongful, tortious and in bad faith.

58. Federal also acted in bad faith toward Hemispherx by, among other things, (a) denying Hemispherx the full insurance benefits to which Hemispherx was entitled, under the Federal Customarq Quality Policy, without a reasonable basis; and (b) knowingly or recklessly disregarding its lack of a reasonable basis for denying Hemispherx the full insurance benefits to which it was entitled under the Federal Customarq Quality Policy.

59. The wrongful, tortious and bad faith conduct of Federal was undertaken knowingly, consciously and deliberately, and with the intent to both harm Hemispherx and to deny Hemispherx the full insurance rights and benefits it is entitled to receive under the Federal Customarq Quality Policy.

60. As a result of Federal's bad faith conduct, Hemispherx has suffered and is continuing to suffer damages, costs and other losses.

61.     To remedy the bad faith conduct of Federal, Hemispherx may recover: (a) interest on the total amount of Hemispherx's unpaid insurance claims in connection with the Underlying Lawsuits, from the date Hemispherx first made its claim, in an amount equal to the prime value of interest plus 3%; (b) punitive damages; and (c) court costs and attorneys' fees, pursuant to 42 Pa. C.S.A. § 8371.

WHEREFORE, Hemispherx requests that judgment be entered in its favor and against Federal for statutory bad faith, in an amount to include all interest, punitive damages and costs and fees permitted by 42 Pa. C.S.A. § 8371, as well as all other and further relief as this Court deems just and proper.

## REQUEST FOR JURY TRIAL

Hemispherx hereby requests a trial by jury of this action.

Dated: July __, 2002

_____
Lee M. Epstein (I.D. No. 61762)
Linda J. Karpel (I.D. No. 62009)
FRIED & EPSTEIN, LLP
325 Chestnut Street, Suite 900
Philadelphia, PA 19106
215.625.0123

Attorney for Plaintiff, Hemispherx Biopharma, Inc.